would be a cloud upon the plaintiff's title. The only way in which this order could possibly injure the plaintiff would be by its use against him as an adjudication; and if the order is attempted to be so used, and the court or officer was without jurisdiction, that objection will then be available to the plaintiff. There is no fraud alleged, and no fact to give a court of equity jurisdiction.

---

### MORTON TRUST CO. v. SANDS et al.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

1. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION—WILLS.

A will speaks as of the time of the testator's death, and whether or not it violates the statute against perpetuities must be determined as of that date, and not as of some subsequent date.

2. SAME—PERSONAL PROPERTY.

Testator provided by his will that when his youngest child should attain its majority his residuary estate should be divided between his wife and his three children, and that one of such equal proportions should be invested as a separate fund for the benefit of each of said persons; the income thereof to be paid over to each of them as long as they lived. At the death of the wife or of any of the children the principal sum should be divided equally between the survivors. The will further provided that when the youngest child should reach majority $30,000 should be set apart by the executors, before the residuary estate was divided for the benefit of testator's wife; the interest thereof to be paid to her during her life, and at her death the principal to revert to testator's estate. *Held*, that the disposition attempted to be made by the legacy of $30,000 violated the statute forbidding the suspension of the absolute ownership of personal property for more than two lives in being; that the vice in the attempted disposition of the fund was not cured by the fact that the widow died before the youngest child came of age, so that no illegal suspension of absolute ownership was actually effected; and that as to such fund testator died intestate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 48–50.]

Ingraham and Laughlin, JJ., dissenting.

Appeal from judgment on report of referee.

Action by the Morton Trust Company, as trustee under the will of Mahlon Sands, deceased, against Mahlon Alan Sands and others. From part of a judgment entered on the report of a referee, Mahlon Alan Sands and another appeal. Judgment modified, as directed in opinion, and, as modified, affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William G. Choate, for appellants.
Russell Benedict, for respondent trustees and others.
William Williams, for respondent Morton H. Sands.
Egerton L. Winthrop, Jr., for respondent Morton Trust Co.

SCOTT, J. This appeal presents but the single question as to the validity of a certain disposition of personal property attempted to be made by the will and codicil of Mahlon Sands, deceased. The testator died on May 7, 1888, leaving a widow, one child by a former wife,

and three children by his second wife, who became his widow. After making certain provisions for his wife and children not necessary to be considered here, he provided by the tenth clause of his will that when his youngest child should attain its majority his residuary estate should be divided equally between his wife, provided she has remained his widow, and his children by her; that one of such equal proportions should be invested as a separate fund for the benefit of each of said persons, and the income thereof to be paid over to each of said persons so long as they lived. At the death of his wife, or of any of the children by her, the principal sum hereinbefore provided for should be divided equally between the survivors, except that if any child should die leaving issue such issue are to take the share allotted to the parent. By the third clause of the codicil to the will the testator provided as follows:

"It is my will that when my youngest child attains the age of twenty-one years a sum of thirty thousand dollars be set apart by my executors, before my residuary estate is divided, for the benefit of my wife, provided she remains my widow, and that said sum be invested for her benefit and the interest thereon paid over to her during her natural life, and at her death the principal to revert to my estate."

The controversy arises over this legacy of $30,000, and the question presented is whether the disposition attempted to be made violates the statute forbidding the suspention of the absolute ownership of personal property for more than two lives in being. Reading the will and codicil together, as we must, it is clear that the testator expected that his wife would survive the majority of his youngest child. In that event the residuary estate, including the $30,000, would be held by the executors, as trustees, until said youngest child should attain his or her majority. The $30,000 would then be held by his executors as trustees during the lifetime of his widow, and the said sum would then fall into the residuary estate, to be divided into parts and held for the respective lives of the surviving children. There can be no doubt that, if the expectations of the testator had been fulfilled, the will and codicil would have required, at least as to a part of the $30,000, that it be held in trust for more than two lives in being at his death. It so happened, however, that the testator's widow did not survive until the majority of the youngest child, so that the occasion never arose for setting apart the fund of $30,000, and no illegal suspension of absolute ownership was actually effected.

The question is whether or not this fortuitous circumstance cured the vice in the attempted disposition of the fund. In our opinion it did not. The will speaks as of the time of the testator's death, and whether or not it violates the statute against perpetuities must be determined as of that date, and not as of some subsequent date. The rule is inflexible, and has been often repeated and applied, that the validity of such an attempted disposition is to be determined, not by the event, but by the possibility. As was said in Hersog v. Title Guarantee Trust Company, 177 N. Y. 86–89, 69 N. E. 283, 67 L. R. A. 146:

"The rule is that where, by the terms of an instrument creating an estate, there may be an unlawful suspension of the power of alienation, or of the ab-

solute ownership, the limitation is void, although it turns out by subsequent events that no actual suspension beyond the prescribed period would have taken place. In other words, to render such future estates created by will valid, they must be so limited that in every possible contingency they will absolutely terminate within the period of two lives in being at the death of the testator, or the estate will be held void."

In the light of this plain and explicit statement of the rule, we see no escape from the conclusion that the attempted disposition of the fund of $30,000 was void, and that as to that sum the testator died intestate, unless the disposition was saved as to one-third of the sum by the circumstance that, as to that proportion, the reversion after the death of the widow would be held for the life of Morton Harcourt Sands, the youngest child mentioned in the third clause of the will, so that as to that proportion the absolute ownership would be suspended in any event only during two lives, to wit, his and that of his mother. The result of holding the disposition valid as to this share would be that Morton Harcourt Sands would receive, not only the provision which his father intended for him, but also one-fourth of the larger sum which the testator intended should be enjoyed solely by the other two children of his second marriage. There is nothing to indicate that any such result as this was within the intention of the testator. The rule in such cases is to hold the entire disposition invalid. Benedict v. Webb, 98 N. Y. 460–466; Brown v. Quintard, 177 N. Y. 75–85, 69 N. E. 225. It is true that the testator's daughter by the first marriage will thus share in the fund, and that her father did not intend that she should do so. This, however, is the logical and necessary consequence of his intestacy as to this fund, resulting from his attempt to make an unlawful and invalid disposition of it. By holding the disposition invalid in toto, the departure from the testator's intention will be the result, not of our decree, but of his own act.

The judgment appealed from must be so modified as to decree that Mahlon Sands died intestate as to the whole trust fund of $30,000 attempted to be set up by the third clause of the codicil to his will, and that the whole of said sum shall be paid over in equal shares to his children by the second wife, and the substituted trustees under the antenuptial settlement of Mabel Sands, his child by his first marriage; and, as so modified, the judgment will be affirmed, with costs in this court to all parties separately appearing and filing briefs, payable out of the estate.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. (dissenting). The question presented on this appeal depends upon the construction to be given to the tenth clause of the will of Mahlon Sands and the third clause of the codicil to such will. The will is dated May 19, 1883, and the codicil is dated May 1, 1885. The testator died on May 7, 1888, and the will was admitted to probate January 25, 1889. The testator left him surviving a widow and four children, the next of kin and heirs at law; Morton Harcourt Sands being the youngest child. The testator's widow died July 4, 1896, and Morton Harcourt Sands, the youngest child, became of age

September 15, 1905. The will, after making provision for the testator's daughter Mabel, a child by a former wife, and his son Morton Harcourt Sands, provides in the eighth clause that the business of making certain patent medicines in which the testator was interested be continued as far as possible as then conducted, and the profits realized therefrom received by his executors until his youngest child became of age. His executors were then directed to divide the profits of testator's interest in such business between his wife, provided she remained his widow, and her children by the testator. Should his wife have remarried, the profits were then to be equally divided between the children of the second marriage, and what the will calls the "fee" of his interest in the said patent medicines was to be disposed of as thereafter provided with reference to his residuary estate. By the fourth clause of his will he gave to his wife, so long as she should remain his widow and until such time as his youngest child by her should attain his majority, two-thirds of the net income of his estate; and by the ninth clause of the will he provided that the income of his estate not otherwise disposed of should be invested by his executors.

The intention of the testator as to the disposition of his estate during the minority of his youngest child is clear. The estate was to be kept intact, except in regard to the provision to be made for his daughter by his first wife. His wife was to have his Newport house during her life and two-thirds of the net income of his estate. Upon the arrival at age of his youngest child there was to be a distribution of his estate, which was provided for by the tenth clause of the will. That clause is as follows:

"Tenth. When my youngest child attains its majority, I direct that all the rest, residue and remainder of my estate be divided equally between my wife, provided she has remained my widow, and her children by me; and that one of such equal portions be invested as a separate fund for the benefit of each of said persons, and the income thereof be paid over to each of said persons as long as they may live. At the death of my wife, or of any of my children by her, the principal sums hereinabove provided for shall be divided equally between the survivors, but should any child die leaving issue, such issue are to receive in equal shares such portions of the patent medicines above referred to and of my residuary estate as their parent would have received if living."

Here again the intention of the testator is plain. There was no distribution of the estate until the arrival of his youngest child at age, but when that period arrived the share of each child depended upon the survival of his wife and upon whether or not she had remarried. The whole scheme of the will as to the disposition of the residuary estate thus depended upon the condition existing at the time the youngest child arrived at age, and the disposition of his estate was necessarily postponed until that time. By the third clause of the codicil, executed on the 1st day of May, 1885, the testator directed a modification of the distribution of his estate which was to take place upon the majority of his youngest child. That clause is as follows:

"Third. It is my will that when my youngest child attains the age of twenty-one years a sum of thirty thousand dollars be set apart by my executors before my residuary estate is divided, for the benefit of my wife, provided she remains my widow, and that said sum shall be invested for her benefit, and the interest thereon paid over to her during her natural life, and at her death the principal to revert to my estate."

This clause must be read as a modification of the scheme contained in the tenth clause of the will, but this clause could become of effect only upon the testator's widow surviving the arrival of his youngest child at the age of 21. Until that time arrived no part of this third clause of the codicil could become effective, no sum of $30,000 could be set apart by the executors, no fund was created, and no trust existed. It may be assumed that the surrogate in his decree construing the will correctly decided that the trust attempted to be created by this clause of the will was in violation of the statute requiring that the title to personal property should absolutely vest within two lives in being, because there was, first, the life of the youngest son; second, the life of the widow; and, third, the life of one of the two children other than the youngest son—which must end before the absolute title to two-thirds of the $30,000 could vest, and therefore the provision which directed that two-thirds of the $30,000 should be held in trust for his two children other than the youngest son never was effectual. But the whole provision in relation to the creation of the trust and the creation of the fund that was to be subject to the trust depended upon his wife surviving the majority of the testator's youngest child. If there was no trust created, no trust fund constituted, it seems to me evident that the question as to the validity of the trust when it was created would become immaterial. The question here is, not whether this modification of the tenth clause of the will by the third clause of the codicil created an illegal trust, but whether any trust, legal or illegal, was ever created; and it is the negative answer to that question which seems to me to determine this controversy.

If the tenth clause of the will gave $30,000 to the widow absolutely upon the youngest child attaining its majority, there would be no question but that this bequest would lapse and no rights could be acquired under it; nor could it affect the validity of the other provisions of the will, of which the codicil was made a part. It seems to me, therefore, that by the death of the wife before the arrival of the time at which the executors were directed to create the trust the whole third clause of the codicil became inoperative, the trustees never did or could act under it, and no trust fund was ever created to which this provision could apply. The direction in the codicil was that:

"When my youngest child attains the age of twenty-one years a sum of thirty thousand dollars be set apart by my executors before my residuary estate is divided, for the benefit of my wife, provided she remains my widow."

Certainly during the minority of the youngest child the executors could not have been required, nor would it have been proper for them, to create this trust of $30,000, and after the death of his wife, for whose sole benefit this trust was to be created, the executors never could have been required to set apart the sum of $30,000 or create the trust fund contemplated by the codicil. It is not claimed that such trust fund ever has been created or ever could be created under this clause, because when the time for its creation arrived the wife for whose benefit it was to be created was dead; and how, therefore, can it be said that, if the wife had survived the minority of the youngest child and a trust fund had been created, a portion of it would have

been void, and that, therefore, the provisions of the will as to the disposition of the remainder of the testator's residuary estate was also void? In this case, as in all others, the intention of the testator is to control, so far as it does not violate any legal rules for the distribution of property, and where it distinctly appears that it was his intention that at a time in the future a trust fund should be created for the benefit of his wife, and his wife did not live to require the creation of the trust fund, it would seem necessarily to follow that the trust fund never was created and the provisions in regard to it simply became inoperative and could have no effect upon a valid disposition of his residuary estate, from which the trust fund was to be created in the event that his widow survived at the time fixed for its creation. If the testator's wife had died before the testator, there would be no question; and it seems to me that the same result follows where she died after the testator but before the trust was to be created.

This question was not the one before the surrogate. The question there was whether or not this third clause of the codicil created a valid trust, or ever could create a valid trust, as to two-thirds of the corpus of the trust fund; and in his determination that it did not and could not I entirely agree. We have now the question as to whether any trust fund of $30,000 for the benefit of the widow was created, and that question was not and could not have been determined by the surrogate, as the time at which the trust fund was to be created had not then arrived. As I read the surrogate's decree, he did not attempt to determine what would happen in the event that the widow did not survive the minority of her youngest child. By the eighth clause of the surrogate's decree it was adjudged and determined—

"in respect of the third clause of the codicil, that the bequest of thirty thousand dollars ($30,000) to the testator's widow is made payable out of the capital of the testator's estate when the youngest child, viz., Morton Harcourt Sands, shall attain majority or shall previously die, and provided she, the said Mary M. Sands, shall have, until then, remained the testator's widow. It is adjudged and determined that the provision of the will for the reversion of the said legacy to the residuary estate, upon her death or remarriage, after the majority, or decease before attaining majority, of Morton Harcourt Sands, is invalid, except as to that portion of the said legacy which shall, under the provisions of the tenth clause, be incorporated in the portion held in trust for Morton Harcourt Sands, or be paid to his issue, if he be then dead, and that, as to the balance of the said legacy, it shall be divided among the persons who would be entitled to the testator's personal estate if he had died intestate."

There is here no adjudication as to what would happen in the event that the testator's widow died during the infancy of the testator's youngest child. It is based upon the assumption that a trust fund would be created when the youngest child arrived of age, and that when so created the bequest of the remainder over was void. But it was nowhere determined that in the event that the widow died before the majority of the youngest child any trust was created, or that if no trust ever was created or no trust fund separated from the residuary estate, the invalidity of the trust, if it had been created, would involve intestacy as to the portion of the testator's residuary estate which was legally disposed of by the will. The general rule is that, where a party

sets up a former decree as res adjudicata, it must appear that the question presented was determined by the decree. In determining the extent to which an adjudication becomes controlling, the case of Griffen v. Keese, 187 N. Y. 454, 80 N. E. 367, illustrates this well-settled principle. In that case a fund had been created to provide for an annuity. A portion of that became distributable upon the death of one of the annuitants, and the trustees commenced an action for an accounting, and it was therein decided, among other things, that the appellant in the case then under consideration was not entitled to any share in that portion of the annuity fund or the unappropriated income that was then distributed. Upon the case then under consideration the same claimant insisted that she was entitled to a portion of the fund that had been set apart to provide for the annuitants, and in considering the judgment in the first action the court said:

"That judgment is to be interpreted in the light of the circumstances then existing, the issues then raised, and the attitude of the then defendant, the appellant in the case at bar. No change has been made in the annuity fund, except such as had been wrought by the distributions of principal and unappropriated income, as death had reduced the number of annuitants. The only issue raised and litigated was whether the defendant Haggerty and the issue, children, personal representatives, or assigns of either of the five grandchildren of the testator were entitled to share in that portion of the annuity fund or its unappropriated income which had become distributable by the death of the annuitant, Sarah A. Willets, or in any distribution thereafter to be made so long as either of said grandchildren should survive. The controversy was confined to the disposition of the annuity fund as such, and it embraced nothing else. * * * As to the issue actually decided, the judgment in that action is res judicata; but it cannot have that effect upon a question which was not then involved, and, for aught we know, had not yet then arisen. Stokes v. Foote, 172 N. Y. 327, 65 N. E. 176. Neither the record nor any extrinsic evidence brought to our attention shows that the question now before us was in fact litigated in the action of 1897. The burden of making this proof rests upon the respondents, who rely upon the plea of res judicata, and any uncertainty as to what has actually been litigated must inure to the benefit of the appellant."

Applying the rules there stated as to the limitation of a former adjudication, it certainly cannot be said that the surrogate in his decree adjudicated anything except the illegality of the third clause of the codicil as affecting a trust to be created under it. But there was no adjudication as to when such a trust was created, or as to the effect upon the will itself where, from contingencies subsequently happening, no trust was ever created.

We think, therefore, that the judgment appealed from must be modified, by providing that no part of the testators' estate was ever affected by the third clause of the codicil, and that the estate should be distributed under the tenth clause of the will, with costs to the appellants and the plaintiffs, payable out of the estate.

LAUGHLIN, J., concurs.