gan, and that amount I am willing to allow to the executrix, but no more. With regard to the loans alleged to have been made by Mr. Mulligan to Mr. Hartmann, amounting to $2,380, I am convinced that insufficient evidence has under the circumstances of this case been given to sanction their repayment by the executrix out of the funds of the estate, and that the executrix should be surcharged in her account with the amount of the same. Settle decree accordingly.

---

(82 Misc. Rep. 25.)

### In re TURNER'S ESTATE.

(Surrogate's Court, New York County. July, 1913.)

1. TAXATION (§ 886½*)—TRANSFER TAX—PROPERTY SUBJECT.

    Where the power of appointment of the remainder, given by will to the last surviving life tenant, was not absolute but was contingent on all testatrix's children dying without leaving issue surviving them, the remainders were taxable at 1 and not at 5 per cent.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 886½.*]

2. PERPETUITIES (§ 6*)—VALIDITY—RESTRICTION ON ALIENATION.

    Where a nonresident testatrix devised her real estate to trustees with direction to pay the income to her three daughters during their respective lives and upon the death of any one to pay her share to her issue or, if none, to her surviving sisters, and upon the death of the daughters without issue the property was to be disposed of according to the will of the daughter last dying, and where none of the daughters had issue at testatrix's death, the trust was void as suspending the power of alienation for more than two lives in being in violation of Real Property Law (Consol. Laws 1909, c. 50) § 42.·

    [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

3. WILLS (§ 70*)—VALIDITY—WHAT LAW GOVERNS.

    The validity of a provision of a nonresident's will disposing of New York real estate is governed by New York laws.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 184–186; Dec. Dig. § 70.*]

In the matter of the estate of Sarah Buckley Turner, deceased. From an order assessing and affixing a transfer tax, the executrices appeal. Reversed.

Adolph Sonnenthal, of New York City, for State Comptroller.

Whitridge, Butler & Rice, of New York City, for petitioners.

COHALAN, S. The appeal by the executrices from the order assessing a tax upon the decedent's estate presents for determination the following questions: First, whether the remainders after the life estate of decedent's children are taxable at 5 per cent. or 1 per cent.; second, whether the appraiser erred in his valuation of the decedent's real estate in this county.

The decedent, who was a resident of Italy, died on the 9th day of August, 1912, leaving real estate situate in this state. Her will was duly admitted to probate in this county. The executrices contend that under the provisions of the will the powers of appointment given to

decedent's children are contingent, and that, in the event of the grantees failing to exercise the power, the property passes to decedent's grandchildren, who are beneficiaries of the 1 per cent. class. The appraiser reported that the remainders are taxable as passing to beneficiaries of the 5 per cent. class.

[1] If the powers of appointment are contingent, the remainders are presently taxable at 1 per cent. Matter of Burgess, 204 N. Y. 265, 97 N. E. 591. If, however, the powers of appointment are absolute, the remainders over which such powers may be exercised are not taxable until such time as the powers have actually been exercised. Matter of Howe, 86 App. Div. 286, 83 N. Y. Supp. 825, affirmed 176 N. Y. 570, 68 N. E. 1118. It is therefore necessary for the surrogate to construe the will of the decedent in order to determine whether the powers of appointment are contingent or absolute and whether the remainders are taxable at 5 per cent. or 1 per cent. The following are the clauses of the will that are material to the questions under consideration:

"I appoint as executrices of this my will and as trustees of my real estate in the city of New York my daughters Ellinor and Juliet or the survivor of them, and I hereby give and bequeath to my said daughters and to my daughter Jeanie a life interest in my said real estate. But shall there be issue of the said marriage or marriages, the child or children shall succeed to his, her or their mother's life interest in her share of my said real estate, which share shall pass to such child or children absolutely and in fee immediately upon the decease of my last surviving daughter in equal shares or in such shares as their mother or mothers, my said daughter or daughters, shall have directed by any deed of appointment or by her or their last will and testament, and shall any of my said daughters decease unmarried, her or their share of my real estate shall pass to her or their sister or sisters during their life or lives, and upon the decease of the last of my daughters the life interest or interests which she may have enjoyed in the said trust estate shall be divided absolutely and in fee between any of the issue of my three daughters, and the same shall succeed per stirpes and not per capita. And shall all of my said three daughters decease leaving no issue surviving, then, and in such event, my said property shall pass absolutely to such person or persons as my last surviving daughter shall appoint by her last will and testament or by any deed of appointment, and failing any such disposition by will or by power of appointment, I hereby give and bequeath the said property absolutely to my next of kin."

The decedent was survived by her three daughters, Ellinor B. Turner, Juliet Turner, and Jeanie Turner Coppinger, aged 54, 46, and 44 years, respectively, at the date of decedent's death. Ellinor and Juliet were unmarried; Jeanie was married but had no issue. It is evident that the power of appointment given to the last survivor is contingent upon all the decedent's children dying without leaving issue them surviving.

[2] But an examination of the will suggests the important question as to whether the trust is not invalid as suspending the power of alienation for more than two lives in being.

[3] The decedent left no personal property in this state. Therefore her will, in so far as it attempts to dispose of real estate, is to be construed in accordance with the laws of this state. Code Civ. Pro. § 2694; Matter of Majot, 199 N. Y. 29, 92 N. E. 402; White v. Howard,

46 N. Y. 144. Section 42 of the Real Property Law (Consol. Laws 1909, c. 50) provides that:

"Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

It is not sufficient that the property might under certain contingencies vest so that it would be alienable during the lives of two persons in being at the date of decedent's death, as the violation of the statute is not cured by the happening of fortuitous circumstances which permit such a vesting of the estate during two lives in being as would prevent an illegal suspension. Morton Trust Co. v. Sands, 122 App. Div. 691, 107 N. Y. Supp. 698. If the condition or limitation is such that it may by any possibility limit the power of alienation to more than two lives in being at the time of the creation of the estate, the grant is inoperative and void. Schettler v. Smith, 41 N. Y. 328; Lee v. Tower, 124 N. Y. 370, 26 N. E. 943. Applying these principles to the will under consideration, it appears that, as none of the children of the decedent had issue at the time of her death, the remainder was not vested and the property could not under these circumstances be aliened until the death of the last of the three daughters, because the will provides that, upon the death of the first of the daughters who may die without leaving issue her surviving, her share shall be paid to the surviving daughters during their lives. This means that the surviving sisters shall enjoy the share of the income to which their deceased sister was entitled. It does not say that her share of the estate will be paid to the surviving daughters. This direction that the share of the income of a deceased daughter shall be paid to the surviving daughters shows that the intestate intended that the trust estate should remain undivided until the death of the last survivor. Upon the death of the next daughter who may die without leaving issue, her share of the income, together with one-half of her deceased sister's share, is to be paid to the surviving daughter, but no part of the trust fund would then be alienable by the last survivor, because the will provides that it is only in the event of her dying without issue that she may dispose of the property by power of appointment; and, as it cannot be said while she is living that she may not have issue, it is not until her death that the property can be aliened. It therefore appears that, in the event of decedent's three daughters dying without issue them surviving, the power of alienation of decedent's real estate in this state would be suspended for more than two lives in being at the time of the creation of the estate. The trust is therefore void (Farmers' Loan & Trust Co. v. Kip, 192 N. Y. 266, 85 N. E. 59; Leach v. Godwin, 198 N. Y. 35, 91 N. E. 288), and the decedent died intestate as to the real estate situated in this state. As the property descends to decedent's children, its value is presently taxable at the rate of 1 per cent.

Upon the hearing before the appraiser, real estate experts were examined on behalf of the estate in order to show the value of decedent's real property in this county. A real estate expert was also examined

on behalf of the state comptroller. There was a material difference between their estimates of the value of decedent's real property. The appraiser adopted the valuation of the state comptroller's expert. An examination of the testimony shows that this valuation was not unreasonable or unwarranted, and the surrogate, therefore, will not interfere with the finding of the appraiser.

The order fixing tax will be reversed, and the appraiser's report remitted to him for correction as indicated.

Order reversed.